**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| GRANT BARFUSS, on behalf of himself and all others similarly situated,<br>          Plaintiffs<br><br>     v.<br><br>DGSE COMPANIES, INC.; L.S. SMITH, JOHN BENSON, AND WILLIAM OYSTER,<br>          Defendants | No. 12 Civ. 3664 (JJB)<br>ECF Case |

**DECLARATION OF IRA M. PRESS IN SUPPORT OF (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**KIRBY McINERNEY LLP**

Ira M. Press
   New York Attorney Registration No. 2319481
   ipress@kmllp.com (*admitted pro hac vice*)
Beverly T. Mirza
   California Attorney Registration No. 237240
   bmirza@kmllp.com (*not admitted in N.D. Tex.*)
Thomas W. Elrod
   New York Attorney Registration No. 4778916
   telrod@kmllp.com (*not admitted in N.D. Tex.*)
825 Third Avenue, 16th Floor
New York, NY  10022

*Lead Counsel for Lead Plaintiff and Class*

**GRUBER HURST JOHANSEN HAIL SHANK LLP**

Mark A. Shank
   Texas State Bar No. 18090800
   mshank@ghjhlaw.com
Greg P. McAllister
   Texas State Bar No. 24071191
   gmcallister@ghjhlaw.com
1445 Ross Avenue
Suite 2500
Dallas, TX 75202
Telephone:  (214) 855-6800
Facsimile: (214) 855-6808

*Liaison Counsel for Lead Plaintiff and Class*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF ALLEGATIONS AND CLAIMS ........................................... 4

III.    PROCEDURAL HISTORY OF THE ACTION................................................. 5

IV.     THE SETTLEMENT AND CONFIRMATORY DISCOVERY ....................... 7

V.      ASSESSMENT OF STRENGTHS AND WEAKNESSES OF CLAIMS ........ 9

VI.     COMPARISON OF THE SETTLEMENT TO SIMILAR ACTIONS ........... 11

VII.    REACTION OF THE CLASS .......................................................................... 11

VIII.   THE PLAN OF ALLOCATION ..................................................................... 11

IX.     THE MOTION FOR ATTORNEYS' FEES AND EXPENSES ..................... 12

        A.      The Work and Experience of Lead Counsel ........................................ 13

        B.      Standing and Caliber of Defense Counsel ........................................... 16

        C.      The Risks of Litigation and the Need to Ensure the Availability of Competent
                Counsel in High-Risk Contingent Securities Cases.............................. 16

        D.      Attorneys' Fee Awards in Similar Actions........................................... 18

        E.      Reimbursement of the Requested Litigation Expenses is Fair and Reasonable ... 19

X.      CONCLUSION................................................................................................. 21

I, Ira M. Press, hereby declare under penalty of perjury pursuant to 20 U.S.C. § 1746, that the following is true and correct:

1.      I am a partner in the law firm of Kirby McInerney LLP ("Kirby McInerney"), Court-appointed Lead Counsel[1] in this litigation.  I have personal knowledge of the facts detailed herein, having been one of the principal attorneys responsible for the prosecution and resolution of this class action (the "Action").  I am admitted to the bar of the State of New York and am in good standing, and I am admitted to this Court pro hac vice. (ECF No. 17).

2.      This declaration is respectfully submitted in support of Lead Plaintiff's Motion for final approval of (1) the proposed settlement set forth in the Stipulation; (2) the Plan of Allocation described in the Class Notice which was mailed to Settlement Class members commencing on July 26, 2013 (the "Notice"); and (3) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

## I.      INTRODUCTION

3.      Lead Plaintiff, on behalf of the Settlement Class, has entered into the Stipulation that, if given final approval by the Court, will resolve all of the claims of the Settlement Class against Defendants DGSE Companies, Inc. ("DGSE" or "the Company"), L.S. Smith ("Smith"), John Benson ("Benson"), and William Oyster ("Oyster") (collectively, the "Individual Defendants" and together with DGSE, the "Defendants") for $1.7 million cash.

4.      On July 8, 2013, this Court entered an order preliminarily approving, *inter alia*, the Settlement, certifying a Settlement Class, appointing Kirby McInerney as class counsel, appointing the law firm of Gruber Hurst Johansen Hail and Shank LLP as liaison counsel,

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as is ascribed in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court on July 3, 2013 (ECF No. 48).

providing for Notice, setting a date of October 21, 2013 at 2 p.m. for the Settlement Fairness Hearing, and appointing Kurtzman Carson Consultants LLC ("KCC") as the Claims Administrator (the "Preliminary Approval Order"). *See* Appendix[2], Ex. 2 (App. pp. 45-58).

5.      Pursuant to the Preliminary Approval Order, over 1,329 packets containing the Notice and Proof of Claim form have been mailed or emailed by KCC, to Settlement Class Members and nominees of Settlement Class Members. *See* Affidavit of Charles Ferrara of Kurtzman Carson Consultants LLC Re: (A) Mailing of Notice of Proposed Settlement of Class Action, and Proof of Claim and Release; (B) Publication of Summary Notice; (C) and Status Report, dated September 13, 2013, Appendix, Ex. 3 (App. p 63).  The Notice described among other things: (i) the Action; (ii) the terms of the Settlement; (iii) the estimated average recovery per share if every Settlement Class member entitled to file a Proof of Claim did so; (iv) the Proposed Plan of Allocation; and (v) the maximum amounts Lead Counsel would seek for attorneys' fees and reimbursement of expenses (the "Request for Attorneys' Fees and Expenses") as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* 15 U.S.C. § 78u-4(a)(7).  *See* Appendix, Ex. 3 (App. pp. 67-78).

6.      The Notice also explained Settlement Class members' rights and procedures for objecting to the Settlement, the Plan of Allocation and/or the Request for Attorneys' Fees and Expenses and the right of Settlement Class members to appear at the Settlement Fairness Hearing. A Summary Notice was published in *Investor's Business Daily* on July 26, 2013.  *See* Appendix, Ex. 3 (App. p. 63).  Additionally, a press release was transmitted over *Business Wire* on July 26, 2013.  *Id.*

---

[2] All references to "Appendix" contained herein refer to Appendix to Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation; Memorandum of Law in Support of Motion for Award of Attorneys' Fees and Reimbursement of Expenses filed concurrently herewith.

7.     Additionally, copies of the settlement documents, including the Notice and Proof of Claim form are available on the website maintained by KCC (http://ClassAction.kccllc.net/DGSESecuritiesLitigation) and on Kirby McInerney's website (www.kmllp.com) and may be downloaded at no cost. *Id.* at App. p. 63.

8.     The Preliminary Approval Order provided that any Settlement Class Member who objects to the Settlement, the Plan of Allocation, and/or the Request for Attorneys' Fees and Expenses must file and serve such objections no later than September 30, 2013. Appendix, Ex. 2 (App. pp. 53-55). As of September 16, 2013, Lead Counsel has received no objections.

9.     The deadline for requests for exclusion is September 30, 2013. *Id.* at App. pp. 51-52. As of September 16, 2013, Lead Counsel has received no requests for exclusion. The proposed Settlement is a truly significant and positive result for the Settlement Class, as compared with the risk that a similar, smaller, or no recovery would be achieved after a trial and appeals, possibly years in the future, in which the Defendants would have the opportunity to assert defenses to the claims asserted against them and there might be an inability to satisfy any substantial judgment against them. Further, as explained below, the Plan of Allocation set forth in the Notice, and the requested attorneys' fees of 33% ($561,000.00), of the Settlement cash, which is approximately 93% of counsel's total lodestar (*i.e.*, hourly rates times number of hours worked), and reimbursement of expenses of $13,351.74, are fair and reasonable and should be approved. As detailed below at ¶¶ 66-67, the lodestar calculation includes the total hours worked by Lead Counsel, Liaison Counsel, and the hours worked by counsel for Plaintiff Grant Barfuss, the Rosen Law Firm and the Rosen Law Firm's local counsel, the Payne Mitchell Law Group, in connection with the preparation of the original complaint in this Action.

## II.    SUMMARY OF ALLEGATIONS AND CLAIMS

10.    On September 7, 2012, a Class Action Complaint ("the Complaint") was filed and asserted claims against DGSE and DGSE's officers and directors Smith, Benson and Oyster for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC").  The Action was brought on behalf of persons who purchased or otherwise acquired DGSE stock between April 15, 2011 through and including April 17, 2012.

11.    The circumstances underlying the Complaint's allegations of material misrepresentations by Defendants, and injury to class members are as follows: on April 16, 2012 the Company filed a Form 8-K with the SEC announcing that the Company's financial statements for the periods ended in December 31, 2007, 2008, 2009, and 2010 could no longer be relied upon.  The Company, by restating its previously reported financial statements, admitted that these statements were materially inaccurate.  The Form 8-K also stated that the Company's then "former Chief Financial Officer" (*i.e.*, Benson) engaged in improper accounting of inventory and other balance sheet accounts which caused the restatement.

12.    The following day (April 17, 2012) NYSE AMEX suspended trading in the Company's shares prior to the start of trading.  At the time, DGSE's stock was trading at $7.43 per share.  When trading finally resumed on November 15, 2012, DGSE's stock fell to $5.85 per share, a decline of $1.58 per share (or 21%).  Appendix, Ex. 7 (App. pp. 101-04).

13.    On October 31, 2012, DGSE filed its 2011 Form 10-K that contained a restatement of its 2010 financial statement and "adjustments" to its 2009 retained earnings (the "Restatement").  The Restatement sought to correct a laundry list of "accounting irregularities"

including a single inventory entry of $8.2 million for which "no support could be found."  The total reduction in retained earnings for 2009 was $24.2 million.  Some reductions to retained earnings in 2009 were the result of moving inventory adjustments in expenses from 2010 to 2009.  This caused DGSE to increase 2010 retained earnings by $5.9 million in its Restatement.  When 2009 and 2010 retained earnings are taken together, DGSE had overstated its retained earnings by approximately $18.3 million.

14.     Defendants have denied the Complaint's allegations and do not admit, as part of this Settlement, any wrongdoing.

## III.    PROCEDURAL HISTORY OF THE ACTION

15.     On September 7, 2012, the Complaint was filed in this Court alleging claims under Sections 10(b) and 20(a) of the Exchange Act against DGSE and certain of its officers and directors.  (ECF No. 1).  Pursuant to the PSLRA (15 U.S.C. §78u-4(a)(3)(a)(ii)) counsel for the plaintiff published notice on September 7, 2012, advising members of the class proposed in the Complaint of the filing of the Action, and of the opportunity for putative class members to move for appointment as lead plaintiff pursuant to the PSLRA on or before November 6, 2012.

16.     Pursuant to the PSLRA (15 U.S.C. § 78u-4(a)(3)(B)), members of the putative class moved for appointment as lead plaintiff and approval of lead counsel on or before November 6, 2012.

17.     By order dated January 24, 2013 Order, the Court appointed movant Hillel Hyman as the Lead Plaintiff, Kirby McInerney LLP as Lead Counsel for the Class, and the law firm of Gruber Hurst Johansen Hail Shank LLP ("GHJHS") as liaison counsel.  (ECF No. 28). Subsequently, the Court extended the deadline to file the Amended Complaint until May 10,

2013 (ECF No. 36), and subsequently extended the deadline further until May 24, 2013.  (ECF No. 40).

18.     On April 10, 2013, the parties requested permission to mediate the Action before Magistrate Judge Stickney ("Judge Stickney" or "Mediator").  (ECF No. 37).  On April 11, 2013, the Court issued a mediation order acceding the parties' request to mediate before Judge Stickney.  By Court order dated April 17, 2013, the mediation was scheduled for May 13, 2013.  (ECF No. 39).  Defendants requested the participation of counsel for plaintiffs in the related shareholder derivative action, *Farmer v. Oyster*, No. 12 Civ. 03850 (N.D. Tex.) (JJB) (the "Derivative Action"), at the mediation.  Counsel for all parties participated in the Court-ordered mediation conducted by Judge Stickney on May 13, 2013.  (ECF No. 39).  In light of the imminent complaint filing deadline, Lead Counsel was working diligently on the Amended Complaint in the weeks prior to the mediation.  Lead Counsel did not believe it could assume that mediation would result in an agreement to settle.

19.     The parties failed to reach a settlement at the mediation.  However, shortly after the mediation session, Judge Stickney submitted a mediator's proposal for settlement of both actions to counsel.  Under the terms of the Judge Stickney's proposal, DGSE would pay $1.7 million to settle the claims in this Action.  On May 20, 2013, Lead Plaintiff and Defendants had formally agreed to the terms of the Judge Stickney's proposal for settlement.  *See* ECF No. 43.

20.     On June 6, 2013, the parties filed a joint status report informing the Court of, *inter alia*, the status of the proposed Settlement.  *Id.*  On July 3, 2013, Lead Plaintiff moved for preliminary approval of the Settlement, certification of a settlement class, and approval of the Settlement.  (ECF Nos. 45-48).  On July 8, 2013, the Court granted Lead Plaintiff's motion for preliminary approval.  (ECF No. 49).  On July 8, 2013, this Court also certified the Settlement

Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  *Id.*  The Court also certified Lead Plaintiff Hillel Hyman as Class Representative, appointed Lead Counsel Kirby McInerney as Class Counsel, and found that the Notice and Summary Notice constituted "the best notice practicable under the circumstances."  *See* Preliminary Approval Order, Appendix, Ex. 2, (App. pp. 47, 49).

## IV.   THE SETTLEMENT AND CONFIRMATORY DISCOVERY

21.    The Settlement was negotiated on an informed basis and with a thorough understanding of the merits and value of the Parties' claims and defenses.

22.    In light of the limited financial resources available to satisfy any judgment or settlement in this Action, Lead Counsel believed it would be in the best interest of the putative class, if settlement negotiations were attempted before incurring the legal expenses associated with briefing and arguing motions to dismiss, engaging in protracted discovery proceedings, and costly expert reports and related discovery.

23.    In advance of the May 13, 2013 mediation session, Lead Counsel submitted a written mediation statement to Judge Stickney that set forth the bases for Lead Counsel's claims on liability and damages.

24.    At the mediation, counsel for both sides made detailed oral presentations, addressing topics such as scienter, and the amount of recoverable damages.  The parties did not come to an agreement at that mediation.

25.    Shortly after the mediation session, Judge Stickney made a mediator's proposal. This proposal reflected a reasoned compromise based on Lead Plaintiff's and Lead Counsel's knowledge of the strengths and weaknesses of the case and DGSE Companies, Inc.'s financial

condition, gained through extensive investigation and review and analysis of materials prior to drafting the contemplated amended complaint and the mediation session.

26.     The Parties informed the Court of the Settlement that they accepted Judge Stickney's proposal in their June 6, 2013 Joint Status Report.  (ECF No. 43).

27.     The Parties' agreement in principle on the material terms and conditions of the Settlement was memorialized in the Stipulation dated July 3, 2013.  (ECF No. 48).

28.     Thereafter, Lead Counsel conducted confirmatory discovery to confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Class.  This process included review of documents relating to the Company's Class Period accounting practices and subsequent restatement efforts, in addition to an in-person interview with Brett Burford ("Burford"), who serves as DGSE's Chief Financial Officer, and is knowledgeable of Defendants' Class Period accounting practices and remediation efforts.  During this interview, Burford provided a plausible explanation of the accounting practices and system issues that caused the Company to restate its financial statements.  Such practices included but were not limited to the "[i]nappropriate set-up and implementation of DGSE's AccountMate Enterprise Resource Planning system," which was previously disclosed in a Forms 8-K and 10-K filed with the SEC on October 31, 2012.

29.     Between May and July 2013, the parties actively drafted and negotiated the formal Stipulation and related exhibits.

30.     When the formal agreement was finalized on July 3, 2013, the Stipulation was executed by the Parties and submitted to the Court on July 3, 2013 for preliminary approval, which was granted by order entered July 8, 2013.

31.     The entire Settlement Fund of $1,700,000 (after deduction of Court-approved expenses and attorneys' fees and notice and administration costs), plus interest, will be distributed to members of the Class who timely submit valid proofs of claim.  There will not be any reversion to Defendants or any of their insurers of any portion of the $1,700,000 settlement fund.

## V.     ASSESSMENT OF STRENGTHS AND WEAKNESSES OF CLAIMS

32.     The investigation and confirmatory discovery, described above, on both liability and damages issues enabled Lead Plaintiff to thoroughly evaluate the strengths and weaknesses of the claims and the risks of continued litigation, and accordingly to enter into the Settlement on a fully informed basis.

33.     Lead Plaintiff considered, among other things: (i) the cash benefit to Settlement Class Members under the terms of the Stipulation; (ii) the difficulties and risks involved in pleading, under the stringent standards of the PSLRA, certain of the allegations in the proposed Amended Complaint, such as whether scienter of each defendant; (iii) in the event Lead Plaintiff survived a motion to dismiss, the strong likelihood of a complex and risky expert-driven challenge to class certification, after extensive discovery; (iv) the difficulties and risks involved in proving the complex claims, such as the whether the alleged fraud caused the proposed Class' losses; (v) whether Lead Plaintiff can also prove that Defendants acted with fraudulent intent in making the false and misleading statements; (vi) the probability that Defendants would move for summary judgment at the close of discovery, leading to a battle of the experts with respect to scienter and loss causation issues; (vii) the attendant risks of litigation, especially in a complex action such as this, including the ability to maintain class status through to judgment; (viii) the delays inherent in such litigation, including appeals; and (ix) of the Defendants' ability to satisfy

a judgment following protracted discovery and trial, given DGSE's relatively small, and declining, cash position.

34. Securities class actions are by their nature legally and factually complex and difficult. Here, there were real risks that Lead Plaintiff would be unable to establish the required elements of its claims, including scienter, loss causation, and damages.

35. The central allegations in the Complaint are that Defendants misrepresented DGSE's financial statements during the Class Period, causing DGSE's stock to trade at artificially inflated prices.

36. Defendants maintain that during the Class Period, Defendants believed DGSE's financial statements to be true, and therefore Lead Plaintiff cannot prove scienter. While Lead Plaintiff believes he could have proven otherwise, documents produced in confirmatory discovery and an interview conducted in the confirmatory discovery process revealed that Defendants' plausible explanation of the relevant events was one that might have been believed by a jury.

37. Moreover, Defendants likely would have proffered experts to opine that much of the alleged investor damages resulted from market-wide conditions or other factors unrelated to any alleged misrepresentations. Accordingly, Lead Plaintiff faced a significant risk that, even if his claims were successfully prosecuted, a jury would accept Defendants' analysis of the damages and significantly limit any recovery.

38. Finally, Lead Plaintiff and the Class faced a significant risk that, were the Action to proceed through discovery and summary judgment to trial, and were the class to prevail on its claims, Defendants would lack the resources to satisfy the judgment, and Defendants' liability insurance would have been depleted in the defense of the Action.

39.     During the mediation process, discussions concerning the Parties' respective arguments enabled Lead Plaintiff to carefully assess the value of the claims, including the risks of proving falsity, scienter, loss causation and damages.  Because Lead Plaintiff's internal analysis was based on historical data and information, the facts and circumstances underlying these issues were well-understood and vetted when the parties agreed to settle.

## VI.     COMPARISON OF THE SETTLEMENT TO SIMILAR ACTIONS

40.     The view that the Settlement is fair is also supported by a comparison to the settlements of other securities class actions.

41.     According to a recent study of settlements in securities class actions, for all securities class actions settled in 2012, the median settlement recovered 17.3% of estimated class-wide damages.  *See* Laura E. Simmons & Ellen M. Ryan, "Securities Class Action Settlements: 2011 Review and Analysis" (Cornerstone Research 2013) at 8, *see* Appendix, Ex. 8, at (App. p 107).

42.     Therefore, this Settlement, which would recover approximately 30% of class-wide damages of $5.68 million, is well above the median, and represents an excellent result for Class Members.

## VII.     REACTION OF THE CLASS

43.     Class member objections may be filed until September 30, 2013.  To date, there have been no objections received to the Settlement, the Plan of Allocation, or the amount of Lead Counsel's fee request to date.

## VIII.   THE PLAN OF ALLOCATION

44.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members wishing to participate in the Settlement are to file a valid Proof of Claim on or

before November 23, 2013.

45.     As set forth in the Notice, Class Members who file timely and valid Proof of Claim forms will receive distributions from the Net Settlement Fund, after deduction of fees and expenses approved by the Court and taxes incurred on interest income earned by the Settlement Fund.  The distributions will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.  The Plan of Allocation was developed by Lead Counsel.

46.     As explained in the Notice, the Plan of Allocation apportions the recovery among Class Members who acquired DGSE's common stock during the Class Period and were damaged thereby.

47.     The Plan of Allocation reflects an assessment of the damages that may have been recovered in the Action, had liability been successfully established, based on the amount of inflation that was removed from DGSE's stock price as a result of the corrective disclosure of April 16, 2012 (*i.e.*, the disclosure that DGSE's previously-reported financial statements were inaccurate).  The Plan of Allocation calculates each Settlement Member's total recognized losses and allocates recovery based on the timing of each Settlement Class Member's purchases and sales relative to the alleged artificial inflation of the stock.  Each Settlement Class Member will receive his or her pro rata share of the Net Settlement based on the calculation of his, her or its recognized loss.

48.     Lead Plaintiff and Lead Counsel respectfully submit that the Plan of Allocation is fair and reasonable and should be approved by the Court.

## VI.     THE MOTION FOR ATTORNEYS' FEES AND EXPENSES

49.     Consistent with the law in the Fifth Circuit, Lead Counsel requests an award of attorneys' fees and expenses from the Settlement Fund based on a percentage of the Settlement

Fund recovered for the Class on behalf of Plaintiffs' Counsel.[3]  Lead Counsel is making a collective application for a fee award of $561,000, which is 33% of the Settlement Fund (the "Fee Application").  Lead Counsel also requests a collective reimbursement of expenses incurred in connection with the prosecution of this Action in the amount of $13,351.74, plus interest. Below is a discussion of certain factors that Fifth Circuit courts generally consider when evaluating fee applications.

### A.     The Work and Experience of Lead Counsel

50.     Lead Counsel's credentials, as a firm that has extensive experience in plaintiffs' class action securities litigation and with a long and successful track record in such cases, are set forth in Lead Counsel's resume attached hereto as Appendix, Ex. 11, (App. pp. 120-52).

51.     As sole Lead Counsel, Kirby McInerney:

a.     conducted an extensive investigation of the claims asserted in the Complaint filed in the Action, including thoroughly researching the factual foundation and applicable law with respect to the claims asserted in the Action and potential defenses;

b.     drafted a proposed amended complaint;

c.     drafted a mediation statement and made detailed oral presentations at the mediation to Judge Stickney, followed by extensive arms-length tripartite negotiation facilitated by Judge Stickney, which led ultimately to the present Settlement.

d.     conducted confirmatory discovery and research.

52.     Kirby McInerney further worked diligently to finalize and document the Settlement through negotiations with Defendants, the motion for preliminary approval and the

---

[3] As defined herein, Plaintiffs' Counsel includes Lead Counsel, Liaison Counsel, and non-Lead plaintiff's counsel, the Rosen Law Firm, and that firm's local counsel, the Payne Mitchell Law Group.

motion for final approval.  Kirby McInerney oversaw the Claims Administrator and the notice process.  Finally, Kirby McInerney will be appearing at the final settlement hearing and continuing to oversee the administration of the Settlement.

53.     Lead Counsel respectfully seeks a fee award of $561,000 which is 33% of the Settlement Fund.  Plaintiffs' Counsel spent 1,162.70 hours prosecuting this Action and submit a total lodestar of $605,551.50.  As such, the requested fee of $561,000 is less than the lodestar (approximately 93%).  Of the aforementioned figures concerning hours and lodestar, Lead Counsel expended 1,083.75 hours in the prosecution and investigation of this action and submit a lodestar of $578,867.50.  *See* Appendix, Ex. 12 (App. p. 154). Liaison Counsel expended 44.40 hours and have a lodestar of $7,181.50.[4]  *See* Shank Declaration, Ex. 14 (App. p. 159). Additionally, in connection with the preparation of the initial complaint in this action, the Rosen Law Firm submits 27.60 hours and a lodestar of $15,680.00 (*See* Kim Declaration, Appendix, Ex. 15 (App. p. 174) and their local counsel, the Payne Mitchel Law Group, submit 6.95 or 3,642.50 in lodestar. *See* Gresham Declaration, Appendix, Ex. 16 (App. p. 199).

54.     The schedule attached hereto as Appendix Exhibit 12 is a detailed summary of the amount of time spent by each attorney and professional support staff of Kirby McInerney who was involved in the litigation, and the lodestar calculation based on Kirby McInerney's current billing rates.  Additionally, all attorneys are full-time employees of Kirby McInerney.  No contract attorneys were employed by Lead Counsel on this matter.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Kirby

---

[4] According to the Declaration of Mark A. Shank, Liaison Counsel's reported lodestar includes the firm's unreimbursed expenses.  Appendix, Ex. 14 (App. p. 159, 161).  Liaison Counsel's correct lodestar is $7,181.50, which equals the sum of the firm's reported attorneys' time ($4,144.00) and professional support time ($3,037.50). *Id.*

McInerney, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

55.    The hourly rates for the attorneys and professional support staff at Kirby McInerney included in Appendix Exhibit 12 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted by courts in other securities or shareholder litigation.  The rates are in-line with the rates of other law firms that specialize in prosecuting or defending complex securities class actions.  Annexed hereto as Exhibit 10 is a table of billing rates for securities class action plaintiffs' firms and defense firms compiled by Lead Counsel from fee applications submitted by such firms.

56.    Kirby McInerney's lodestar figures are based upon the firm's billing rates, which do not include charges for expense items.

57.    In addition to Kirby McInerney's lodestar, included in this petition is the lodestar of Lead Plaintiff's liaison counsel, Gruber Hurst Johansen Hail Shank LLP ("GHJHS").  The Declaration of Mark A. Shank of GHJHS is attached hereto as Appendix, Ex. 14 (App. pp. 158-71).  GHJHS has assisted Lead Counsel by serving as local counsel in this Action and generally providing aid and advice to Lead Counsel concerning local rules and practices, reviewed pleadings and motions and related papers during the course of the Action to conform to local rules.  This work was performed by and under the direction of Lead Counsel, without duplication of effort.  The total number of hours GHJHS expended on this Action from inception of the case through July 5, 2013 is 44.40.  GHJHS's total lodestar is $7,181.50.

58.    The attached Declarations of Philip Kim of the Rosen Law Firm and Dean Gresham of the Payne Mitchell Law Group set forth the hours and lodestar that non-lead plaintiff's counsel submit in connection with their preparation of the original complaint in this

Action.  Appendix, Exs. 15-16 (App. pp. 173-204).

**B.     Standing and Caliber of Defense Counsel**

59.     The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  DGSE and the Individual Defendants were represented by Thompson & Knight LLP and Fulbright & Jaworski LLP – two of the country's most prestigious law firms.  In the face of this experienced, and formidable opposition Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade the Defendants to settle the case on terms favorable to the Class.

**C.     The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases**

60.     This prosecution was taken by Lead Counsel entirely on a contingent fee basis. The risks assumed by Lead Counsel in bringing these claims to a successful conclusion are described above.  Those risks are also relevant to an award of attorneys' fees.  Here, the risks assumed by Lead Counsel, and the time and expenses incurred without any payment, were extensive.

61.     From the outset, Lead Counsel understood that it was embarking on a complex, expensive and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of this Action, and that funds were available to compensate staff and to cover the considerable out-of-pocket costs that a case such as this requires.  With a significant lag time for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, counsel for plaintiffs have received no compensation during the course of this Action and have incurred $13,351.74 in out-of-pocket expenses in prosecuting this

Action for the benefit of the Class.[5]

62.     Lead Counsel also bore the risk that no recovery would be achieved.  As discussed herein, from the outset, this case presented some risks and uncertainties that could have prevented any recovery whatsoever.  Despite the most vigorous and competent of efforts, success in contingent-fee litigation, such as this, is never assured.

63.     Lead Counsel knows from experience that the prosecution of a class action does not guarantee a settlement.  To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

64.     Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities law can only occur if private investors take an active role in protecting the interests of shareholders.  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

65.     Lead Counsel's extensive and persistent efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Class.  In circumstances such as these, and in consideration of Lead Counsel's hard work and the extraordinary result achieved, the requested fee of approximately 33% of the Settlement Fund is reasonable and should be approved.

---

[5] As discussed below at ¶¶ 70-74, Lead Counsel seeks $13,351.74 in total expense reimbursement for expenses incurred by Lead Counsel, Liaison Counsel, and the Rosen Law Firm.

> **D.     Attorneys' Fee Awards in Similar Actions**

66.     As described in Lead Plaintiff's Memorandum of Law in Support of Motion for Award of Attorneys' Fees and Reimbursement of Expenses, the requested fees are fair and reasonable under both the percentage approach and the lodestar/multiplier methodology.

67.     Exhibits 12 through 16 detail the time and expenses incurred and the hourly rates of Lead Counsel, Liaison Counsel, and the Rosen Law Firm and the Rosen Law Firm's local counsel, the Payne Mitchell Law Group, in connection with the prosecution of this case. Plaintiffs' Counsel spent 1,162.70 hours prosecuting this Action and submit a total lodestar of $605,551.50.   Lead Counsel worked for a total of 1,083.75 hours and for a lodestar of $578,867.50.   *See* Appendix, Ex. 12 (App. p. 154).   Under the direction of Lead Counsel, Liaison Counsel worked for a total of 44.40 hours and for a lodestar of $7,181.50.   *See* Appendix, Ex. 14 (App. p. 158-61).   The Rosen Law Firm, counsel for Grant Barfuss, prepared the operative complaint that was filed on September 7, 2012.   ECF No. 1.   The Rosen Law Firm has not billed time following the appointment of Lead Counsel.   The Rosen Law Firm worked for a total of 27.60 hours and for a lodestar of $15,860.00.   *See* Appendix, Ex. 15 (App. pp. 174).   In the aggregate, local counsel for the Rosen Law Firm, the Payne Mitchel Law Group worked for a total of 6.95 hours and for a lodestar of $3,642.50.   *See* Appendix, Ex. 16 (App. pp. 199). Following the appointment of Lead Counsel, the Rosen Law Firm or their local counsel did not perform any work under the direction of Lead Counsel.

68.     The fee requested here 33% of the Settlement Fund – less than counsel's lodestar – is well within the range generally awarded in securities class action litigation.   This fee is justified by both the impressive recovery achieved (especially when viewed relative to the potential recovery had the Class prevailed on all of its claims at trial) and by practice and precedent in this Circuit, where district courts normally award fees that exceed counsel's lodestar

(often as high as 4 times counsel's lodestar). *See, e.g.*, *Di Giacomo v. Plains All Am. Pipeline*, No. 99 Civ. 4137, 2001 U.S. Dist. LEXIS 25532, at * 32, (S.D. Tex. Dec. 18, 2001) ("courts typically apply multipliers ranging from one to four"); *Friedman v. Penson Worldwide, Inc.*, No. 11 Civ. 2098 (N.D. Tex. Aug. 23, 2013) (awarding lodestar multiplier of 1.7) Appendix, Ex. 17 (App. pp. 205-07); *In re Dell Sec. Litig.*, No. 06 Civ. 276, 2010 U.S. Dist. Lexis 58281 (N.D. Tex. June 11, 2010) (awarding lodestar multiplier of approximately 1.8); *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (noting that "the requested lodestar is reasonable for this efficiently prosecuted case and a multiplier of 5.2 is warranted").

69.     The percentage fee requested here is within the range frequently approved by courts, especially where, as is the case here, the requested fee is less than counsel's lodestar. *See, e.g., In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2012 U.S. Dist. LEXIS 108516, at *2 (S.D.N.Y. Aug. 1, 2012) (awarding 33% fee of $12 million settlement fund although lead counsel had 43% discount to lodestar); *In re Pilgrim's Pride Corp. Sec. Litig.*, No. 08 Civ. 419 (E.D. Tex. May 2, 2012) (awarding fees representing 34% of lodestar) Appendix, Ex. 18 (App. pp. 208-16); *In re Giant Interactive Grp. Inc. Sec. Litig.*, 279 F.R.D. 151, 162, 165 (S.D.N.Y. 2011) (awarding 33% fee of $13 million settlement fund based on negative multiplier); *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33-1/3% fee in $6.75 million settlement although lead counsel had negative lodestar multiplier).  These decisions and the decisions cited in the accompanying memorandum in support of the fee application demonstrate the requested fee is fair.

### E.     Reimbursement of the Requested Litigation Expenses is Fair and Reasonable

70.     Plaintiffs' counsel seek reimbursement of $13,351.74, plus interest, in litigation expenses reasonably and actually incurred by Plaintiff's Counsel, in connection with commencing and prosecuting the claims against the Defendants.

71.     From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until this Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced by them to prosecute this Action.  Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the case.

72.     As detailed in Exhibit 13 to the Appendix, Kirby McInerney, has incurred a total of $10,511.47 in unreimbursed litigation expenses in connection with the prosecution of this Action.  *See* Appendix, Ex. 13 (App. p. 156).  These expenses are reflected on the books and records maintained by Kirby McInerney.  These books and records are prepared from expense vouchers, check records and other source materials, and are an accurate record of the expenses incurred.  Kirby McInerney's expenses identifies the specific category of expenses, *e.g.*, on-line legal research, out-of-town travel costs, conference calls, postage expenses, and other costs actually incurred for which Lead Counsel seek reimbursement.  *Id.*

73.     Liaison Counsel has submitted $466.24 in expenses pursuant to its work under the direction of Lead Counsel.  *See* Appendix, Ex. 14 (App. pp. 159, 162).  Additionally, the Rosen Law Firm submitted expenses of $2,374.03 in conjunction with its representation of Barfuss and the drafting and filing of the Complaint.  *See* Appendix, Ex. 15 (App. p. 174).

74.     All of the litigation expenses incurred were necessary to the successful prosecution and resolution of the claims against the Defendants.  In addition, the Notice apprised potential Class Members that Lead Counsel would be seeking reimbursement of expenses in an amount not to exceed $15,000, excluding notice and administration costs.

75.     In view of the complex nature of this Action, the expenses incurred were reasonable and necessary to pursue the interests of the Class.   Accordingly, Lead Counsel respectfully submits that the expenses incurred by Lead Counsel and Liaison Counsel, and other plaintiff's counsel should be reimbursed in full.

**VII.   CONCLUSION**

76.     In view of the significant recovery to the Class, the very substantial risks of this Action, the substantial efforts of Lead Counsel, the quality of the work performed, the contingent nature of the fee, the complexity of the case and the standing and experience of Lead Counsel, Lead Counsel respectfully submits that the Settlement should be approved as fair, reasonable and adequate; that the Plan of Allocation should be approved as fair and reasonable; that a fee in the amount of 33% of the $1,700,000 Settlement Fund, or $561,000.00 plus interest, should be awarded to Plaintiffs' Counsel, and litigation expenses in the amount of $13,351.74, plus interest should be reimbursed in full.

I declare under penalty of perjury that the foregoing is true and correct.   Executed on September 16, 2013 in New York, New York.

/s/ Ira M. Press
Ira M. Press

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 16, 2013, I electronically caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system that will electronically send notification of such filing to all counsel of record.

_____*/s/ Ira M. Press*_____

Ira M. Press, Esq.
